**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **KYMBERLY HOBBS, ADMINISTRATOR OF THE ESTATE OF CHARLES JAMES GIVENS, DECEASED,** | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:23CV00003 |
| v. | ) ) | **OPINION AND ORDER** |
| **ANTHONY RAYMOND KELLY, ET Al.,** | ) ) ) ) | JUDGE JAMES P. JONES |
| Defendants. | ) | |

*Daniel Zemel and Mark J. Krudys*, THE KRUDYS LAW FIRM, PLC, Richmond, Virginia, *C. Paul Stanley, III*, C. PAUL STANLEY ATTORNEY AT LAW, Wytheville, Virginia, *and Thomas M. Jackson, Jr.*, THE JACKSON LAW GROUP, PLLC, Wytheville, Virginia, for Plaintiff; *Jeremy B. O'Quinn*, THE O'QUINN LAW OFFICE, PLLC, Wise, Virginia, for Defendant Samuel Dale Osborne.

The plaintiff in this lawsuit seeks damages for the death of her decedent, Charles James Givens, who died while incarcerated in a Virginia state prison, and who she contends was beaten to death by correctional officers. One of the defendants, Correctional Officer Samuel Dale Osborne, is alleged to have failed to act to protect Givens from the attack. In Counts IV and V of the Complaint, state law claims for gross and willful and wanton negligence are asserted against Osborne.

In turn, Osborne has filed a Motion to Dismiss these Counts on the ground that he owed no duty under Virginia law to protect Givens.[1]

For the reasons set forth below, I will deny the motion.[2]

I.

I must consider the well-pleaded facts alleged in the Complaint as true in determining the Motion to Dismiss.

The Complaint alleges that Givens, while incarcerated at Marion Correctional Treatment Center (Treatment Center), died on the morning of February 5, 2022, from injuries he received during a beating by correctional officers. Osborne did not participate in the assault, but he and the codefendants escorted Givens to the shower room where the beating took place. Osborne remained in the room during the assault. At all relevant times, including the morning of the assault, the defendants were employees of the Virginia Department of Corrections (VDOC) who were working at the Treatment Center.

---

[1] The plaintiff also asserts a federal claim in Count II under 42 U.S.C. § 1983 against Osborne for failure to intervene. That claim is not involved in the present Motion to Dismiss. The court has subject-matter jurisdiction of the state law claims under 28 U.S.C. § 1367(a).

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

The Treatment Center is a state prison in Marion, Virginia, that houses incarcerated persons with mental health issues or limited intellectual functioning. Givens had lived at the Treatment Center since 2018 and officials had classified him as a minimal risk to security because his limited intellectual and emotional capacity would never surpass that of a second or third grader. His cognitive deficits developed after suffering a traumatic brain injury as a young child, stunting the growth of his communication skills, emotional intelligence, and executive functioning. Additionally, he suffered from Crohn's disease, a chronic inflammatory bowel disease that causes abdominal pain and chronic diarrhea. Givens used medication to manage the symptoms, but sometimes he soiled himself.

Some correctional officers believed Givens intentionally defecated on himself. They would become angry when they had to assist with cleaning him, making him a target of physical and emotional abuse. During his incarceration, he received medical treatment for his injuries on several occasions. At least one of those occasions included a hospitalization. In 2018, he was taken to the hospital because of an assault by hot tap water. The Virginia State Police investigated, described the assault as a scalding, and indicated that the correctional and treatment officers had been involved. Givens went to the hospital in 2021 five times. In February of 2021, a hospital admission record showed that he was found on the ground in hypothermic shock. In June, he was seen for right leg bruising, swelling,

and pain after he had fallen about a week and a half earlier. In October, he suffered two more bouts of hypothermia because of exposure to the cold. During the last bout in October, the doctor noted the increased acuity of his illness, and that Givens was likely septic in addition to struggling with shortness of breath. After he was found unresponsive in December of 2021, he was taken to the hospital for cold exposure and hypothermia.

On the morning of February 5, 2022, Givens defecated on himself. Only Officer Osborne was assigned to Givens' cell block that morning and the other four codefendants came from other areas in the Treatment Center to escort Givens to the shower room. Usually, for an inmate who posed minimal risk, just one or two officers would escort an inmate to the shower. One officer held Givens by the arm as they walked. A witness heard Givens tell the five defendants that he did not want to go to the shower room.

Video footage showed four defendants —— Correctional Officers Osborne, Plummer, Montgomery, and Jackson —— enter the shower room with Givens while defendant Sergeant Kelly stood outside the room in the hallway. Plummer repeatedly snapped a wet towel at Givens' genitals and other parts of his body. Jackson and Montgomery dumped cold water on him. At different times, Sergeant Kelly went into the shower room and punched Givens in the ribs and torso. Osborne's codefendants chided him for not participating. Another inmate, tasked

with cleaning Givens' cell, walked back and forth in front of the shower room during the assault as he retrieved cleaning supplies.

Twenty minutes after returning to his cell, Givens asked to go to the medical ward. His request was denied. Osborne walked past Givens' cell and noted nothing of interest regarding Givens. Less than an hour later, Osborne found Givens unresponsive. Five minutes later, he was declared dead. When the defendants wrote statements about what occurred that morning, they related nothing unusual had happened in the shower room. The autopsy report documented fractures to Givens' ribs, causing laceration to his spleen, and massive internal bleeding that led to his death. The report indicated prior bruising and unexplained welts on Givens' arms and legs. The Warden of the Treatment Center called Givens' sister in Alabama, the plaintiff, and allegedly informed her that Givens had died of natural causes.

II.

In the Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), Osborne challenges the sufficiency of the allegations in Counts IV and V, arguing that under Virginia law there is no special relationship between correctional officers that imposes a duty to control the actions of other correctional officers to prevent harm to incarcerated persons. Further, Osborne contends that there is no duty under Virginia law between correctional officers and inmates that requires correctional officers to protect them from harm from other corrections officers.

The plaintiff opposes the motion, arguing that a special relationship existed between Osborne and Givens that established a duty to protect Givens from harm. Alternatively, the plaintiff asserts that, even in the absence of a special relationship creating a legal duty to protect Givens, Osborne owed a general duty to act with ordinary care given the circumstances and recognizable risk of harm.

The parties have fully briefed the issues and the motion is ripe for disposition.

### III.

To survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Resolution of a motion to dismiss "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation marks and citations omitted). If the factual content enables a court to draw reasonable inferences that the defendant is liable, then the claim is plausible. *Iqbal*, 556 at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. The alleged facts must be sufficient to meet all the elements of a claim. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

IV.

I find that based upon the plaintiff's pleadings Osborne had a duty under Virginia law to protect and prevent harm to Givens. The plaintiff has thus adequately pleaded claims for willful and wanton negligence and gross negligence.

In accord with *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938), a federal court exercising diversity jurisdiction must apply the law of the highest court of the state in which it sits. *Wells v. Liddy,* 186 F.3d 505, 527–28 (4th Cir.1999). Where state law is unclear, as here, the court must predict how the highest court of that state would rule if presented with the issue. *Id.* It is therefore the duty of this court to anticipate how Virginia's highest court would decide the present question. *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.,* 957 F.2d 1153, 1156 (4th Cir.1992). As stated by the Fourth Circuit, to forecast a decision of the state's highest court, a court may consider, "canons of construction, restatements of the law and treatises . . ., recent pronouncements of general rules or policies by the state's highest court, . . . well considered dicta, . . . [and] [d]ecisions of the state's trial courts." *Id.*

Under the defense's theory, without a special relationship between Osborne and Givens, Osborne had no duty to control his codefendants, and therefore, neither heightened negligence claim can stand as a matter of law. Specifically, Osborne argues that this court would have to find that a special relationship exists between a correctional officer and an incarcerated person and that his codefendants' criminal

acts were reasonably foreseeable. It is asserted that under Virginia law a correctional officer does not have a duty to control other correctional officers to prevent harm to inmates and that a correctional officer has no duty to protect an inmate from harm by other correctional officers. The plaintiff insists that Osborne had a duty to protect Givens from his codefendants' criminal assault that resulted in his death because a special relationship exists between a correctional officer and an inmate.

Virginia recognizes three forms of negligence: (1) simple or ordinary negligence, (2) gross negligence; and (3) willful and wanton negligence. *Dallas ex rel. Duynes v. Craft*, No. 3:21cv349 (DJN), 2022 WL 2079312, at *24 (E.D. Va. 2022) (citing *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918–19 (Va. 2004). In an action for negligence, a plaintiff must show a legal duty of care, a breach of that duty, causation, and damages. *Terry ex rel. Ambrister v. Irish Fleet, Inc.*, 818 S.E.2d 788, 791 (Va. 2018).

The least severe form, simple negligence, "involves the failure to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another." *Cowan*, 603 S.E.2d at 918. Gross negligence is a more severe form, involving an act or omission, "that would shock fair-minded persons" because of the level of "indifference to another and utter disregard of prudence that amounts to a complete neglect" for "the safety" of another person, but it does not rise to the level of willful recklessness. *Id.* Gross negligence

does not require that the defendant subjectively knew of a substantial risk; the court looks to what a defendant should have known. *Boley ex rel. Boley v. Armor Corr. Health Servs., Inc.,* No. 2:21CV197 (RCY), 2022 WL 905219, at *10 (E.D. Va. Mar. 28, 2022). Willful and wanton negligence denotes the most severe form because the defendant is aware, based on his knowledge of the circumstances and conditions, that his conduct would probably cause injury to another. *Cowan,* 603 S.E.2d at 918–19. With reckless disregard for the other person's rights "or acting with reckless indifference to the consequences" despite his awareness of the circumstances, the defendant consciously acts or fails to act. *Id*.

The heightened levels of awareness regarding circumstances, conditions, and the probability of harm in conjunction with conduct evincing differing degrees of indifference and disregard for the harm create the distinctions between the different categories of negligence. The levels of awareness and the degree of action or inaction provides the framework for judging the severity of negligence that may apply. Simple negligence may appear in the performance of routine activities, resulting from misunderstanding, inadequacy in following instructions, exercising poor judgment, or being inattentive to an assigned task as opposed to indifference and utter or conscious disregard. *Id*. Gross negligence and willful and wanton negligence "are characterized by conduct that represents an unusual and marked departure from the routine performance of . . . activities." *Id*. at 919.

With that backdrop and before determining whether any of these categories of negligence apply to a particular sequence of events and a particular actor or set of actors, I must first determine if a defendant had a legal duty of care regarding another. Whether a legal duty exists is a pure question of law. *Shoemaker ex rel Shoemaker v. Funkhouser*, 856 S.E.2d 174, 177 (Va. 2021). As a general rule, "a person has no duty to control the conduct of third persons in order to prevent physical harm to another." *Burdette v. Marks*, 421 S.E.2d 419, 420 (Va. 1992).

The Supreme Court of Virginia has established two exceptions to the general rule of non-liability. *A.H. by Next Friends C.H. v. Church of God in Christ*, 831 S.E.2d 460, 468–69 (Va. 2019). The first exception involves a defendant who has "expressly assume[d] a duty to protect another from criminal harm." *Id.* at 468. The second is for "dut[ies] not assumed but imposed" based on the existence of a special relationship. *Id.* at 468–69. Even if a duty of care exists, the harm must have been reasonably foreseeable. *Yuzefovsky v. St. John's Wood Apartments*, 540 S.E.2d 134, 140 (Va. 2001).

Under the special relationship doctrine, there are two theories of liability. First, when a special relationship exists between a defendant and a third person that requires the defendant to control the third person's actions so as to prevent harm to a potential victim, the general rule allowing a defendant's inaction is not applicable. *Marshall v. Winston,* 389 S.E.2d. 902, 904 (Va. 1990) (quoting the Restatement

(Second) of Torts § 315 (Am. L. Inst. 1965)).  Second, a special relationship between a defendant and a potential victim of a third person's actions, imposes a duty upon the defendant to protect the potential victim.  *Id*.[3]

Based upon the Restatement (Second) of Torts, it has been held that Virginia negligence law would hold that prison officials are in a special relationship with inmates.  *Rucker v. Piedmont Reg'l Jail Auth*., No. 3:21cv412 (DJN), 2021 WL 3863346, at *7 (E.D. Va. 2021).  Under the Second Restatement, a person who takes custody of another, "under circumstances such as to deprive the other of his normal power of self-protection," has a duty to control the conduct of third persons "to prevent them from intentionally harming the other."  Restatement (Second) of Torts § 320 (Am. L. Inst. 1965).  The comment to that section states that the duty applies to "a jailer or warden of a penal institution."  *Id*. § 320 cmt. a.

A jail official's duty to protect an incarcerated person from a substantial and known risk of harm has been a long-established principle.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (noting that "[i]t is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is

---

[3] The Third Restatement has consolidated the two theories, eliminating the redundancy between the general duty owed to another in a special relationship and the duty owed to another to control a third person.  Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 40(a) cmt. a (Am. L. Inst. 2012) ("an actor in a special relationship with another owes the other a duty of reasonable care with regard to risks that arise within the scope of the relationship.")

the equivalent of recklessly disregarding that risk.). The Second Restatement recognizes that "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other." Restatement (Second) of Torts §314A(4) (Am. L. Inst. 1965). Using that guidance, a special relationship exists between correctional officers and incarcerated persons because the correctional officer takes custody of inmates under circumstances where they are deprived of the ability to protect themselves. The custodial aspect makes the relationship special for purposes of negligence because the inmate is vulnerable. *A.H.*, 831 S.E.2d at 470 (recognizing that "a special relationship exists between a vulnerable individual in a custodial relationship and his or her custodian," imposing "a duty of reasonable care upon the custodian to protect the vulnerable individual in his custody"). Additionally, the Second Restatement imposes upon a custodian a duty to anticipate danger when the custodian knows or has reason to know the other is in immediate need of protection. Restatement (Second) of Torts § 320 cmt. d. (Am. L. Inst. 1965). The Restatement illustrates the point by using the example of a sheriff or peace officer who knows that a prisoner is in danger from mob violence. It imposes a duty upon the sheriff to defend the prisoner and to exercise reasonable care in obtaining assistance to help with the defense. *Id*. I find that the plaintiff has

sufficiently alleged that Osborne had a special relationship with Givens that created a duty to protect him while he was in custody.

The mere existence of a special relationship is not enough. "A duty of care arises only where the 'particular circumstances of that special relationship' make the danger of harm from a third party foreseeable." *Bradford v. Craom,* No. 0386-22-2, 2023 WL 2487310, at *3 (Va. Ct. App. Mar. 14, 2023) (unpublished) (quoting *Yuzefovsky,* 540 S.E.2d at 140).

Osborne, relying on *Marshall*, asserts that his codefendants' criminal actions were not foreseeable; therefore, he bore no duty to stop them from harming Givens. Following *Marshall's* reasoning, that general tenet would appear to be true if the assaultive criminal conduct was reasonably unforeseeable. 389 S.E.2d at 904. In that case, the plaintiff alleged that a sheriff and a jailer negligently released an inmate prematurely. Subsequently, the inmate killed the plaintiff's husband. The court held that the allegations failed to show the defendants owed a special duty to the decedent. The plaintiff did not plead "the defendants knew or should have known that [the inmate] was likely to cause bodily harm to others if not controlled." *Id.* (internal quotation marks and citation omitted). The court found that the plaintiff did not allege facts that would allow a person to reasonably infer that the sheriff or jailer knew or should have known the inmate would cause harm if they did not control him. Thus, the plaintiff failed to plead a special relationship between the defendants

and the decedent. Without a special relationship, no legal duty to control the prematurely released inmate existed. Further, the court held that the plaintiff failed to plead that "some specific harm could be anticipated to an identifiable individual or class of individuals." *Id*. at 905.

*Marshall* is distinguishable from the case here. Based on the plaintiff's recitation of historical events, in that Osborne was actually present during the assaults by his fellow officers, I can reasonably infer that Osborne should have known that the other officers would injure Givens.

V.

For the reasons stated, I find that the plaintiff has sufficiently pleaded that defendant Osborne had a duty under Virginia law to protect Givens from the alleged assaults and resulting injury and that failing to do so constituted gross and willful and wanton negligence.[4]

For the forgoing reasons, it is **ORDERED** that defendant's Motion to Dismiss, ECF No. 20, is DENIED.

ENTER: May 19, 2023

/s/ JAMES P. JONES
Senior United States District Judge

---

[4] In doing so, I do not predict whether the plaintiff will be able to submit evidence to ultimately prove these allegations.