IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Abingdon Division

| | | |
|---|---|---|
| KYMBERLY HOBBS, Administrator *etc.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23cv00003 |
| | ) | |
| ANTHONY RAYMOND KELLY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS PART OF THE AMENDED COMPLAINT (ECF 46)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Jeffery Artrip and Travis Poston state in support of their motion to dismiss Plaintiff's supervisory liability claim to the extent that it is based on hypothermia or alleged cold exposure:

Prefatory Statement

Plaintiff has not stated a plausible claim for supervisory liability on the basis of allegations of hypothermia and cold exposure. Mr. Givens died of blunt force trauma, not hypothermia. For these reasons, Defendants and non-party the Virginia Department of Corrections have separately moved for entry of a protective order to forbid further discovery into the issues of hypothermia and cold exposure. In conjunction with that motion, Defendants Artrip and Poston move to dismiss Plaintiff's supervisory liability claim to the extent that it is based on hypothermia or alleged cold exposure. Defendants' instant motion does not attack the plausibility of Plaintiff's supervisory liability claim based on allegations of prior assaults that are comparable to the alleged assault that

resulted in Mr. Givens' death (although they deny the factual allegations).[1]  Notwithstanding the limited scope of this motion, however, granting the requested relief will reduce the issues pursued through discovery and ultimately at trial and serve the purpose of judicial efficiency.

## ALLEGATIONS OF THE COMPLAINT[2]

Plaintiff, Kymberly Hobbs, seeks damages for the death of her decedent, Charles James Givens, who died on February 5, 2022, while housed at Marion Correctional Treatment Center ("Marion"), a facility of the Virginia Department of Corrections. (ECF 46). She names as defendants Anthony Kelly, a correctional sergeant at Marion; Gregory Plummer and Joshua Jackson, treatment officers at Marion; and William Montgomery, a correctional officer at Marion. She also names Defendants Atron and Poston as defendants to her supervisory liability claim.

According to the amended complaint, "Defendants Kelly, Plummer, Jackson, and Montgomery beat and ultimately murdered Mr. Givens." (ECF 46 ¶51). Plummer snapped a wet towel at Mr. Givens, and Jackson and Montgomery threw/dumped ice-cold water on Mr. Givens. (ECF 46 ¶57). Kelly "punched Mr. Givens in the midsection." (ECF 46 ¶57). Plummer, Jackson, Montgomery, and Osborne did not intervene to stop Kelly, and Osborne did not act to protect Mr. Givens from attacks by the other officers. (ECF 46 ¶58). The officers returned Mr. Givens to his cell. (ECF 46 ¶61). Later "Osborne found Mr. Givens unresponsive" and breathing hard. (ECF 46 ¶62, 64). Mr. Givens was taken to the hospital where he was

---

[1] Defendants will file an answer to the amended complaint by no later than March 18, 2024, the date when their responsive pleading is due. Defendants are filing this motion and their accompanying motion for a protective order at this time, instead of later, in hopes of resolving a discovery dispute that bears on the parties' planning for depositions.

[2] Defendants dispute Plaintiff's factual allegations and, should this matter proceed, demands strict proof of each. For the purposes of their motion to dismiss, Defendants accept, as they must, all well-pled factual allegations.

declared dead. (ECF 46 ¶65). "[T]he cause of death was explained as blunt force trauma to Mr. Givens' torso, resulting in laceration of the spleen and massive associated internal bleeding." (ECF 46 ¶71).

Plaintiff asserts that the conduct of Kelly, Plummer, Jackson, and Montgomery constituted excessive force in violation of the Eighth Amendment and battery under Virginia tort law. (ECF 46 Counts I & V). Against Osborne she asserts a claim for failure to intervene in violation of the Eighth Amendment and gross and willful and wanton negligence claims. (ECF 46 Counts II, VII, & VIII). Plaintiff further asserts that Defendants Kelly, Plummer, Jackson, Montgomery, and Osborne violated the Eighth Amendment by denying, delaying, or withholding medical care. (ECF 46 Count III). She also asserts a claim of state law conspiracy against Kelly, Plummer, Jackson, Montgomery, and Osborne for "conspir[ing] to beat and torture Mr. Givens." (ECF 46 Count VI).

With the amended complaint, Plaintiff has added a claim of supervisory liability against Defendants Artrip and Poston. (ECF 46 Count IV). Artrip was Marion's Warden from April 2019 through at least the date of Mr. Givens' death on February 5, 2022. (ECF 46 ¶13). Defendant Poston was a Correctional Captain at Marion. (ECF 46 ¶12).

In support of her supervisory liability claim, Plaintiff alleges several types of prior unconstitutional conduct. According to the amended complaint, "[o]n at least six occasions, Defendant Poston was the supervising officer to COs who assaulted Mr. Givens." (ECF 46 ¶113). Those occasions included trauma to Mr. Givens' head and a laceration above his eye in December 2015, an incident in which Mr. Givens was scalded in the shower in April 2018, and an incident of objects being thrown at Mr. Givens in the shower in December 2018. *Id.* According to the amended complaint, Mr. Givens was subjected to cold-water torture on

3

February 5, 2021; March 13, 2021; October 26, 2021; and December 1, 2021. *Id.* Additionally, prisoners other than Mr. Givens complained of being assaulted in the shower room. (ECF 46 ¶114). Plaintiff also states that Mr. Givens and other prisoners suffered instances of hypothermia. (ECF 46 ¶¶12, 13, 36-38, 40-42, 44, 45, 47, 49, 53, 113).

## Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) tests whether a complaint states a cause of action upon which relief can be granted. *See Randall v. United States*, 30 F.3d 518 (4th Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009). The analysis of a complaint's plausibility is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. "[L]egal conclusions pleaded as factual allegations, unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth." *Wikimedia Found. v. NSA/Central Sec. Serv.*, 857 F.3d 193, 208 (4th Cir. 2017).

## ARGUMENT

The amended complaint does not plausibly state a supervisory liability claim based on hypothermia or alleged cold exposure.

To state a claim under §1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A person cannot be held liable in a §1983 action under a theory of *respondeat superior*. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Rather, to survive dismissal, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to §1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). If a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail. *See id.*

Within this framework, a supervisor may be liable "for the failings of a subordinate under certain narrow circumstances." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013). "[T]o state a claim for supervisory liability, 'a plaintiff must plead that *each* [supervisory] defendant, through the official's *own individual actions*, has violated the Constitution." *Evans v. Chalmers*, 703 F.3d 636, 660-61 (4th Cir. 2012) (Wilkinson, J., concurring) (emphasis and alteration in *Evans*) (quoting *Iqbal*, 536 U.S. at 676). A supervisory claim under §1983 must be predicated on facts that, if proven, would establish: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the

5

supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). These elements recognize that supervisory liability "is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 335 (4th Cir. 2001) (internal quotation marks and citations omitted).

"To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799 (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985)). A supervisor cannot "reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Slakan*, 737 F.2d at 373. The second element of a supervisory liability claim requires a showing of "'a supervisor's continued inaction in the face of documented widespread abuses.'" *Id.* (quoting *Slakan*, 737 F.2d at 373). "The supervisor's own response to the knowledge of a risk of constitutional injury must be so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices." *Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020) (internal quotation marks and citation omitted). In the context of constitutional violations, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.2d 692, 696 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)); *see also Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994) (holding that "proof of mere negligence, without more, is inadequate to ground supervisory liability" under §1983).

To satisfy the causation element of a supervisory claim, there must be "an affirmative causal link between the supervisor's inaction and *the particular constitutional injury suffered by the plaintiff*." *Shaw*, 13 F.3d at 799 (emphasis added). A plaintiff must show that the prior alleged conduct of subordinates was "comparable" to the conduct that caused the injury or harm underlying Plaintiff's claim. *See Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014) (observing that "[a] supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place"). To borrow from a parallel aspect of municipal liability under §1983, "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a [defendant] was indifferent to the risk of her specific injury . . . [i]nstead 'a plaintiff must demonstrate that a [defendant's] decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)) (emphasis added in *Carter*); *see also Burnham v. West*, 681 F. Supp. 1160, 1162-63 (E.D. Va. 1987) (applying causation principles of municipal liability to a supervisory liability claim).

The amended complaint fails to satisfy the second and third elements of a supervisory liability claim with respect to hypothermia and cold exposure. Even if we assume that Artrip and Poston were aware of instances of hypothermia, inaction in response to those issues does not show deliberate indifference to or tacit authorization of the alleged offensive practices—officers' striking an inmate in violation of VDOC policies and state law—that resulted in Mr. Givens' death. Further, there is no causal link between Artrip's or Poston's alleged inaction regarding hypothermia and Mr. Givens' fatal injuries. Givens did not die from hypothermia, complications

7

resulting from cold exposure, or "cold-water torture." According to the amended complaint, the medical examiner determined that the cause of death was "blunt force trauma to Mr. Givens' torso, resulting in laceration of the spleen and massive associated internal bleeding." (ECF 46 ¶71). There is not a causal link between Artrip's or Poston's alleged inaction with respect to Mr. Givens' experiencing hypothermia or cold-exposure and his death from an alleged criminal assault. Because Plaintiff's allegations regarding hypothermia and cold exposure do not satisfy the causation element for supervisory liability, her claim based on predicate conduct relating to hypothermia and cold exposure should be dismissed.

## Conclusion

For these reasons, the Court should dismiss Plaintiff's supervisory liability claim to the extent that it is based on hypothermia or alleged cold exposure.

Respectfully submitted,

/s/ D. Patricia Wallace
D. Patricia Wallace, VSB #92964
Assistant Attorney General
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
Tel.: 804-786-2912; Fax: -4239
E-mail: pwallace@oag.state.va.us
*(Counsel for Defendants Artrip & Poston)*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel for Plaintiff and Defendants.

s/ D. Patricia Wallace
D. Patricia Wallace, VSB #92964
Assistant Attorney General