IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| KYMBERLY HOBBS, ADMINISTRATOR OF THE ESTATE OF CHARLES JAMES GIVENS, DECEASED, ) ) ) ) ) | |
| Plaintiff,  ) ) | Case No. 1:23cv00003 |
| v.  ) ) | |
| ANTHONY RAYMOND KELLY, et al., ) ) | |
| Defendants.  ) | |

### DEFENDANTS ANTHONY KELLY, GREGORY PLUMMER, JOSHUA JACKSON AND WILLIAM MONTGOMERY'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE

Defendants, Joshua Jackson, Anthony Kelly, Gregory Plummer and William Montgomery, by counsel, submit the following memorandum in support of their motion in limine.

### STANDARD OF REVIEW

"A motion in limine is a pretrial motion which requests that the court exclude inadmissible or prejudicial evidence before it is actually offered at trial." *Gonzalez v. Seaworld Parks & Entm't., LLC*, No. 4:20cv27, 2021 U.S. Dist. LEXIS 141256, at *2–3 (E.D. Va. July 28, 2021) (internal quotations omitted). Motions in limine "may be directed toward barring specific evidence or argument and may be based on any of the grounds available under the Federal Rules of Evidence." 3 James Wm. Moore, Moore's Federal Practice § 16.77(3)(d)(ii) (3d ed. 2013).

1

"The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *United States v. Verges*, No. 1:13cr222, 2014 U.S. Dist. LEXIS 17969, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). Such "[q]uestions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006). But a motion in limine must be granted when the evidence "is clearly inadmissible on all potential grounds." *Emkami v. Bolden*, 241 F. Supp. 3d 673, 681–82 (E.D. Va. 2107) (internal quotations omitted).

## LAW AND ARGUMENT

These defendants move to exclude the following from opening statements, argument by counsel, and evidence at the trial of this action:

1. Evidence or argument related to Ronald West taking a polygraph, polygraph results, or the defendants not taking a polygraph. (ECF No. 171, Pl.'s Ex. 158). "[P]olygraph evidence is inadmissible in this circuit." *United States v. Sanchez*, 118 F.3d 192, 197 (4th Cir. 1997). "Fourth Circuit precedent makes clear that '[p]olygraph results are generally inadmissible.'" *Chapman v. Willis*, No. 7:12CV00389, 2014 WL 2159344, at *1 (W.D. Va. May 23, 2014) (quoting *United States v. Blake*, 571 F.3d 331, 346 (4th Cir.2009) (citing *United States v. Brevard*, 739 F.2d 180, 182 (4th Cir.1984)). This proposed evidence is not admissible and should be excluded.

2. Evidence or argument of whether the defendants had spanked their children. Evidence or argument would not be relevant and would be substantial risk of prejudice, confusion, and delay. Fed. R. Evid. 402 (irrelevant evidence is inadmissible), 403 (stating

2

relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues or undue delay).

At the deposition of Gregory Plummer, plaintiff's counsel asked:

BY MR. KRUDYS:

```
 7      Q    Right.  So did you -- did you ever spank
 8   your child?
 9           MR. BELL:  Object to the form.
10           THE WITNESS:  Yes, I've spanked my
11      children.
12   BY MR. KRUDYS:
13      Q    All right.  And you -- how -- when your
14   child was -- did you spank your child when your child
15   was as young as four and five years old?
16      A    No.
17           MR. BELL:  Object to the form.
18   BY MR. KRUDYS:
19      Q    When did you start spanking them?  At what
20   year did you start spanking them?
21           MR. BELL:  Object to the form.
22           MS. WALLACE:  Form.
23           THE WITNESS:  I can't name a specific year
24      or a specific time.  I could tell you it was
25      when they got to the age of knowing right from
```

3

```
 1      wrong.
 2   BY MR. KRUDYS:
 3      Q    They knew right from wrong, but instead of
 4   having a conversation with them -- and I'm not saying
 5   it's wrong, but you felt that it was appropriate to
 6   hit them in order to get your point across; is that
 7   right?
 8           MR. BELL:  Object to the form.
 9           THE WITNESS:  I wouldn't say I hit them.  I
10      would say I spanked --
11   BY MR. KRUDYS:
12      Q    That's what spanking is.  That's what
13   spanking is, isn't it?
14      A    No.
15      Q    Okay.  So --
16      A    I would view spanking as a smack or a tap
17   to the rear end.
18      Q    All right.  So you're doing that with
19   somebody that knows right from wrong but still isn't
20   following what you're telling them to do; right?
21           MR. BELL:  Object to the form.
22           MS. WALLACE:  Form.
23           THE WITNESS:  I guess in a way, that's how
24      you can phrase it.
```

(*See* Ex. 1, Plummer Dep. at 96-97). Clearly, this type of evidence is not relevant, inflammatory, and should be excluded.

3.  Certain proposed photographs of Givens deceased in his cell and autopsy photos should be excluded or redacted (ECF No. 171, Pl.'s proposed Ex. 10, 11, 14). Fed. R. Evid. 403 (stating relevant evidence may be excluded if its probative value is

4

substantially outweighed by a danger of unfair prejudice). "This Court has recognized that autopsy photographs are highly prejudicial, and it will not disturb a district court's decision regarding their admissibility 'absent a clear abuse of discretion.'" *Johnson v. Rankin*, 547 F. App'x 263, 270 (4th Cir. 2013) (quoting *United States v. Analla*, 975 F.2d 119, 126 (4th Cir.1992)).

Certain photographs that include Givens's face, genitalia and other prejudicial features should be excluded or redacted. Defendants hope that the parties can agree upon exclusion and redaction.

4. Evidence or argument related to testimony that lacks personal knowledge and/or is hearsay testimony should be excluded. Fed. R. Evid. 602 (witness must have personal knowledge to testify), Fed. R. Evid. 802 (hearsay is inadmissible).

The plaintiff has listed Edwin Catron, Debbie Douglas and Special Agent Heath Seagle as witnesses. None of these individuals have direct knowledge regarding this case. Catron was an inmate at Marion Correctional Treatment Center, who claims to have heard information from Ronald West regarding Givens's death. Catron did not witness anything related to the case and could only attempt to repeat what West or others told him. (ECF No. 171, Pl.'s Ex. 5).

A step removed from Catron is Catron's girlfriend, Debbie Douglas. Douglas claims to have had telephone discussions with Catron regarding what West had told Catron. Therefore, her information would be hearsay within hearsay. Additionally, the plaintiff has listed text messages and a voicemail message from Douglas to the plaintiff, Ms. Hobbs, regarding information related to Givens's death. (ECF No. 171, Pl.'s Exs. 6-8). All of this

5

proposed testimony or evidence would be regarding out of court statements that contain other out of court statements by other individuals and are therefore inadmissible hearsay.

Likewise, Agent Seagle investigated Givens's death. His report is hearsay. (ECF No. 171, Pl.'s Ex. 27). His grand jury testimony is hearsay. His report containing statements of others is hearsay within hearsay and inadmissible. Further, Agent Seagle was not identified as an expert witness, so the plaintiff cannot elicit or argue what theories Agent Seagle had formed regarding this matter. (*See* Order expert deadline, ECF No. 59.)

5. Evidence or argument related to grand jury testimony that is hearsay and should be excluded. Fed. R. Evid. 802 (hearsay is inadmissible).

The plaintiff proposes to introduce grand jury testimony of George Berry, Eli Goodman, Ms. Hobbs, Agent Seagle, and Ronald West. These out of court statements are hearsay and inadmissible. (ECF No. 171, Pl.'s Ex. 147).

6. Evidence or argument related to a "cover up" or a "code of silence." Fed. R. Evid. 402 (evidence must be relevant); Fed. R. Evid. 403 (evidence should be excluded if its probative value is substantially outweighed by the danger of confusing the issues or misleading the jury.)

Defendants anticipate that Plaintiff may reference or attempt to introduce some reference, argument, testimony, or evidence that prison officials conspire, cover-up, protect each other, or otherwise maintain a code of silence against allegations by prisoners at MCTC. Plaintiff has suggested in court filings and to the media that MCTC officers, VADOC, and the State Police "went into overdrive trying to cover up what happened" to

6

Givens. (ECF No. 61 at 2; *see also* ECF No. 46 (Amended Complaint) at ¶ 28(b) (claiming "evidence of a cover up").

During depositions, Plaintiff has also implied that officers protected one another from allegations by prisoners. *See, e.g.,* Ex. 2, Poston Depo., 86:12–17 ("[T]here are allegations of a mentally ill prisoner against a correctional officer, correct? That's a common thing throughout all of the ones we've gone through, correct?").

Evidence is relevant only if it has a "tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence that is not relevant is inadmissible. Fed. R. Evid. 402. Moreover, Rule 403 of the Federal Rules of Evidence permits the Court to exclude relevant evidence if its probative value is substantially outweighed by the danger of confusing the issues or misleading the jury. Fed. R. Evid. 403.

Other courts have agreed that generalized evidence or argument about an alleged "code of silence" would not be helpful to the jury, would confuse the jury and the risk of unfair prejudice would substantially outweigh any probative value. *See Holt v. Lewsader*, No. 2021 U.S. Dist. LEXIS 171596, at *52 (C.D. Ill. Apr. 19, 2021) (citing *Jones v. City of Chicago*, 2017 U.S. Dist. LEXIS 12857, at *7, 2017 WL 413613, at *3 (N.D. Ill. Jan. 31, 2017)); *Ratliff v. City of Chicago*, 2012 U.S. Dist. LEXIS 164500, 2012 WL 5845551, at *4 (N.D. Ill. Nov. 19, 2012); *Townsend v. Benya*, 287 F. Supp. 868, 876 (N.D. Ill. 2003).

Here, any reference, testimony, or argument concerning Plaintiff's unfounded allegation that prison officials conspire, cover-up, protect each other, or otherwise maintain a code of silence against allegations by prisoners should be excluded as irrelevant,

unhelpful, unduly prejudicial, and also amount to impermissible propensity evidence under Fed. R. Evid. 404.

      7.    Evidence or argument related to uncorroborated speculation and prejudicial statements.

Throughout these proceedings, Plaintiff has attempted to portray her conclusory allegations and speculation as fact. For both statements and documents, the law requires a party to make some preliminary showing—a predicate or foundation—to establish its relevance and usefulness as evidence and justify its consideration by the trier of fact. Failure to establish such a foundation is grounds for exclusion until a proper foundation is laid. *See* Fed. R. Evid. 901; *see also United States v. Wilson*, 115 F.3d 1185, 1188–89 (4th Cir. 1997); *United States v. Horsley*, 105 F.4th 193, 218–19 (4th Cir. 2024).

"Unfair prejudice occurs when evidence leads a jury to make its decision on the basis of factors other than the merits of the case, commonly on the basis of emotion, but also on any other basis not justified by the evidence." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996) (holding that "evidence is unfairly prejudicial and thus should be excluded . . . when there is a genuine risk that the emotions of a jury will be excited to irrational behavior.").

    a.  Insinuation that Givens was left only in his boxers on Feb. 5, 2022

Plaintiff has shown during depositions that she is likely to introduce argument, testimony, or reference suggesting that Givens "was left only in his boxers for hours" following his shower on February 5, 2022.

For example, as seen below, Plaintiff's counsel made that insinuation in several depositions:

> picture you're seeing is taken in the afternoon. He's like that for hours after he goes to the shower. How do you explain that he's there for hours with just boxer shorts, no blanket?

*See* Ex. 3, Artrip Depo., 52:2–5.

> Q. All right. Did Mr. Givens ever get dressed that morning while he sat in his cell for approximately two hours before you came in and noticed him unresponsive?

*See* Ex. 4, Osborne Depo., 62:10–13.

> 17  Q  Would it surprise you, and I'm showing you
> 18  Exhibit 162, picture number 10JPJ, that Mr. Givens
> 19  was, in the middle of February, left in his cell in
> 20  his boxer shorts in the dead of winter for a period
> 21  of two hours? Does that surprise you, sir?

*See* Ex. 5, Stiltner Depo, 61:17–21.

> 19  BY MR. KRUDYS:
> 20      Q.   But then why -- I mean, he was found in
> 21  his boxers in his cell for two hours on the date of
> 22  his death. You don't have any understanding as to
> 23  how many times he was in his cell permitted to just
> 24  be in his boxers in the winter months, correct?

*See* Ex. 6, Jones Depo., 89:19–24.

Abingdon: 1356046-1

```
22        Q.   Okay.  He's just lying in boxers when
23   he's found, correct?
24        A.   Correct.
25        Q.   And there's no evidence that he was
```

```
1    seeking to dress himself, correct?
```

*See* Ex. 7, Sochor Depo., 81:22–25, 82:1.

There is no foundation for such an assertion. Counsel is merely speculating with his purported statements of fact in those questions. While the jury will be instructed that counsel's questions are not evidence, the questioning cited above will clearly attempt to poison the jury.

Thus, any argument, reference, testimony, or suggestion that Givens "was left only in his boxers for hours" after his shower on February 5, 2022, would be purely speculative, unhelpful to the jury, and would be unduly prejudicial.

b. Suggestion that Givens was regularly forced to shower at night.

Plaintiff's counsel has previously made the statement that "Givens was taken to the shower numerous times in the middle of the night, in the dead of winter." See Ex 8, Artrip Depo., 75:10–13; *see also* Ex. 9, Poston Depo., 109:12–15 ("So Mr. Givens is being taken regularly down to the shower in the middle of the night in winter."); 108:6–12 ("[W]hen he's taken out to the shower in the middle of the night in the dead of winter for a shower . . ."); 107:7–12 ("So when Mr. Givens was taken to the shower in the middle of the winter just about every night—or he's soiling himself every night."). These types of statements

10

are exaggerating, unfairly prejudicial, and lack evidence to support them. Further, there are neither allegations nor evidence to suggest that Givens died of exposure on February 5, 2022. Thus, such a statement is not only unduly prejudicial but would also have a tendency to mislead and confuse the jury. The Court cannot permit such prejudice and confusion.

   c. Intimation that Ronald West was placed in protective custody.

Plaintiff has improperly implied that her key witness, Ronald Danny West, was placed in protective custody after making allegations about officers abusing Givens.

For example, Plaintiff's counsel has suggested that West was in protective custody, as during Artrip's deposition, Plaintiff's counsel asked:

```
11    Q    All right.  So did you -- where is -- do you
12  know where Mr. West is being held right now?
13    A    Couldn't tell you.
14    Q    Did you know that he's in protective custody
15  for his own safety?
16    A    Nope.
```

See Ex. 10, Artrip Depo. 69:11–16.

However, there has been no evidence or testimony to suggest that West actually was ever in "protective custody for his own safety."

Yet, even if it was true that West went into protective custody, Plaintiff should not be permitted to invite the jury to speculate as to the reason West was put in protective custody or any significance thereof. Plaintiff would be inappropriately inviting the jury to speculate and to conclude that West's credibility must somehow be greater because of being in protective custody.

11

d. Misrepresentation that Givens had welts on his back.

Since the filing of her original Complaint, Plaintiff has repeatedly characterized the skin mottling on Givens' back, as depicted in his autopsy photos, as "welts," "welt-like," or similar terminology. *See, e.g.*, ECF No. 1, ¶ 23; ECF No. 41, ¶ 25. There is no evidence to support these assertions, and Plaintiff's own expert rejected that suggestion.

During discovery, Plaintiff continued to press the narrative that the discoloration on Givens' back shown in the autopsy photos were welts and that they had been inflicted by whipped wet towels. During deposition, Plaintiff's counsel presented Poston with an autopsy photograph and stated:

```
16      Q.    Well, here's photos of Mr. Givens from
17   his autopsy where there's allegations of him being
18   whipped with wet towels on the back and like.  Is
19   this what you're talking about when you're talking
20   about pink-ish?
```

See Ex. 11, Poston Depo., 81:16–23.

The next day, during Artrip's deposition, Plaintiff's counsel displayed an autopsy photo of Givens, without identifying it, and asked:

```
12      Q    Is there any explanation you have for the
13   welts on Mr. Givens' back, other than being whipped
14   with wet towels while he was in the shower?
15           MS. WALLACE:  Object to form.
16           THE WITNESS:  This is the first time I've
17       seen this photo.
```

See Ex. 12, Artrip Depo., 77:12–17.

12

After Artrip's attorney objected to counsel's failure to identify the autopsy photo for the record and his testimony that the photo showed red welts, Plaintiff's counsel persisted. He stated:

```
1    to mark the record.  My question to him was do you
2    have any explanation that you're aware of for the
3    welts on the back of his back, other than being
4    whipped by a wet towel.  That was my question to
5    him, Patricia.
```

See Ex. 13, Artrip Depo. 78:1–4.

After another objection, Plaintiff's counsel asked a third time:

```
1    Exhibit 112.  Do you have any explanation for the red
2    mark on Mr. Givens' back, other than being whipped by a
3    wet towel by the COs?
4            MR. BELL:  Objection to the form.
5            THE WITNESS:  Are you referring to the
6        redness?
7    BY MR. KRUDYS:
8        Q    Yes, sir.
9        A    It actually kind of looks like mottling.
```

*See* Ex. 14, Artrip Depo., 79:1–9.

Yet, there is no evidence that Givens' had any such "welts" on his back, not even in Givens' autopsy report. Indeed, Plaintiff's own designated expert, Eli Goodman, M.D., who performed Givens' autopsy, testified that the redness on Givens' back was lividity. *See* Ex. 15, Goodman Depo., 78:16–25, *See* Ex. 16, Goodman Depo., 79:1–4. Dr. Goodman further testified that the striations on Givens' back was indicative of Givens' skin being

13

pressed against another surface, which Dr. Goodman described as "sparing of lividity." *Id.* at 79:10–24.

Thus, any reference, testimony, or argument characterizing Givens' skin mottling as "welts," "welt-like," or similar terminology would not only mislead and confuse the jury, excite their passions, and invite them to deliver a verdict an improper basis, but it is belied by Plaintiff's own evidence. The Court cannot permit Plaintiff to mislead the jury to decide this case on such improper grounds.

8. These defendants rely upon their arguments stated in their motion to sever that evidence or argument related to prior incidents involving Givens or those at Marion Correctional Treatment Center that did not involve these defendants are irrelevant and prejudicial. (ECF No. 114); Fed. R. Evid. 402 (irrelevant evidence is inadmissible), 403 (stating relevant evidence may be excluded if its probative value is substantially outweighed by a danger of prejudice, confusing the issues or undue delay).

9. These defendants rely upon the plaintiff's concession that they will not argue and their expert witnesses will not testify to "torture." (ECF No. 137).

10. These defendants will rely upon the motions in limine filed by co-defendants.

WHEREFORE, the Court should exclude these items from the trial of this matter.

14

                    ANTHONY RAYMOND KELLY
                    GREGORY SCOTT PLUMMER
                    JOSHUA RAY JACKSON
                    WILLIAM ZACHARY
                    MONTGOMERY

                    By Counsel

Cameron S. Bell
 VSB No. 47685
PENN, STUART & ESKRIDGE
P.O. Box 2288
Abingdon, Virginia  24212
Telephone:  276/628-5151
Facsimile:  276/628-5621
cbell@pennstuart.com

Timothy W. McAfee
Virginia State Bar Number: 21779
McAfee Law Firm, PLLC
P.O. Box 610
408 Wood Avenue
Big Stone Gap, VA 24219
Telephone: (276) 523-5300
Fax: (540) 301-5777
E-mail: tim@mcafee-law.com

By   _/s/ Cameron S. Bell____
     Cameron S. Bell
     Counsel for Defendants Kelly, Plummer, Jackson and Montgomery

CERTIFICATE OF SERVICE

     I hereby certify that, on March 20, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

                          ___/s/ Cameron S. Bell_____
                                Cameron S. Bell

Abingdon: 1356046-1