```
 1          IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF VIRGINIA
 2                    Abingdon Division

 3   ----------------------------------------------------

 4   KYMBERLY HOBBS, ADMINISTRATOR OF THE ESTATE

 5   OF CHARLES JAMES GIVENS, DECEASED,

 6                         Plaintiff,      Case No.

 7   v.                                    1:23cv00003

 8   ANTHONY RAYMOND KELLY, et al.,

 9

10                         Defendants.

11   ----------------------------------------------------

12

13

14

15                      VIDEOCONFERENCED

16            DEPOSITION UPON ORAL EXAMINATION

17               OF MARK ROBERT SOCHOR, MD,

18          TAKEN ON BEHALF OF THE PLAINTIFF

19                     October 1, 2024

20

21

22

23         ------------------------------------------

24          KATHLEEN BEARD ADAMS, CCR, RPR, CRR

25                      Court Reporter
```

1    Q.   Okay.  Did Mr. Givens fall on the part
2    of the bed that is protected by a mattress,
3    according to your theory?
4    A.   So he would have fallen onto the -- that
5    edge.  And I don't think that that mattress with
6    that rate of fall was going to make any difference
7    in terms of how much acceleration and displacement
8    his ribs had.
9    Q.   Well, did he fall onto the mattress
10   according to your theory or did he fall onto the
11   metal part that is exposed to the right?
12   A.   He could have fallen onto the edge of
13   the mattress, but -- the mattress could have been
14   there, but it's not going to prevent the fracture
15   from a fall.
16   Q.   I see.  And did you do any type of
17   studies with, you know, cadavers like you did for
18   the auto industry?
19   A.   You wouldn't use a cadaver to do this
20   type of study.  That wouldn't be the spirit of the
21   willed-body program.
22   Q.   Okay.  He's just lying in boxers when
23   he's found, correct?
24   A.   Correct.
25   Q.   And there's no evidence that he was

82

```
 1   seeking to dress himself, correct?
 2        A.    I don't know what evidence seeking to
 3   dress yourself would look like.  There's clothes
 4   next to him.  There's shoes next to his head.  I
 5   don't know.  I don't know how he was --
 6        Q.    All right.  So, first, what was
 7   Mr. Givens exactly doing when you postulate he did
 8   this tree-type fall against the mattress?
 9        A.    Nobody would know that.
10        Q.    I see.  All right.  How slippery was the
11   floor that he fell on?
12        A.    I don't know.
13        Q.    All right.  Well, wasn't it mopped and
14   then dry mopped before he was put back in the cell?
15        A.    Sure, but if you have a seizure or you
16   fall down from hypotension it doesn't matter if your
17   feet are stuck to the floor; you're going to fall
18   back or you're going to fall forward.
19        Q.    So it's one of those two things, but you
20   only put seizure in your report on page 19, you
21   didn't reference hypotension, correct?
22        A.    Correct.
23        Q.    Did Mr. Schnetzler when he reviewed your
24   report ask you the question when it says "either"
25   and it refers to a seizure what the other one is?
```