IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

KYMBERLY HOBBS, ADMINISTRATOR
OF THE ESTATE OF CHARLES JAMES GIVENS,
DECEASED,

        Plaintiff,

v.                                            Civil Action No. 1:23-CV-00003

ANTHONY RAYMOND KELLY, *et al.*,

        Defendants.

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE

COMES NOW, Plaintiff Kymberly Hobbs, Administrator of the Estate of Charles James Givens, Deceased, in the above-captioned matter, by counsel, and provides the following response to Defendants Kelly, Jackson, Plummer, Montgomery, and Osborne's (collectively referred to as "Defendants") Motions in Limine and Memorandum in Support. (ECF Nos. 178, 179, and 180).

1.    Virginia State Police asked Mr. Ronald West to take a polygraph examination. He agreed and passed the examination in what the polygrapher said was the most definitive result he had ever seen. **Ex. 1**, Pl's Tr. Ex. 158, 159. The polygraph examination, along with the interview that led up to the polygraph, was videotaped and constitutes another prior consistent statement of Mr. West's testimony, which the Defendants have signaled that they will vigorously attack at trial. In contrast, the Defendants, who had an obligation as part of their employment to submit to internal investigations, all opted to refuse the polygraph examinations offered by the Virginia Department of Corrections, and all quit (some weeks from full retirement status), to avoid further inquiry and

firing.[1]  **Ex. 2**, Kelly Dep. Tr. 10:8-20, 94:16-96:19; **Ex. 3,** Plummer Dep. Tr. 10:8-11:21, 15:5-14; **Ex. 4,** Montgomery Dep. Tr. 6:24-7:2; **Ex. 5,** Jackson Dep. Tr. 40:14-19; **Ex. 6,** Osborne Dep. Tr. 12:16-24, 17:7-18:21.

Although Plaintiff agrees to not offer the foregoing initially in her case in chief, if Defendants persist in attacking Mr. West's story, he should be permitted to state that he emphatically stood by his statements, and, indeed, subjected himself to discipline had he not passed (for making a false statement in an official investigation).  The law may create barriers to the entry of certain evidence, but it should not be a fool to the totality of circumstances nor to permit Defendants to prod a point while fully knowing that Plaintiff is impeded in providing a full-throated response.

2. Plaintiff agrees not to ask Defendants if they spanked their children.  As background, all of the Defendants testified that Mr. Givens was infantile or, at most, operated at the level of introductory elementary school student, **Ex. 2,** Kelly Dep. Tr. 45:5-15; **Ex. 3,** Plummer Dep. Tr. 82:24-83:12; **Ex. 6,** Osborne Dep. Tr. 25:9-20, could not do basic things, and the officers, described as extremely lazy in all of their actions – unwilling to leave their chair to carry out a duty – were required to assist Mr. Givens with basic tasks, such as putting on his boxers. **Ex. 6,** Osborne Dep. Tr. 63:23-24, 110:11-16.  Also, to get Mr. Givens to take any action required repetitive instructions, coaxing, and some officers admit, knowingly making false promises such as to take Mr. Givens to Medical. **Ex. 6,** Osborne Dep. Tr. 49:23-50:9. Many officers were annoyed by Mr. Givens and treated him as less than a human being despite a recognition by the officers that Mr. Givens could not process their instructions. **Ex. 7,** Pl's Tr. Ex. 84, West Aff. ¶¶. 13-15.  The

---

[1] Either acknowledged by the Defendants or a reasonable inference from the circumstances.

2

record shows that employees of MCTC oftentimes responded with violence in an apparent intent to make their point or simply to punish Mr. Givens for conduct for which he was not intellectually responsible. Plaintiff must be permitted to make this broader point at trial, but will refrain from asking Defendants whether they hit their young children for the same conduct.

3. Plaintiff has already redacted autopsy photos to cover Mr. Givens's genitalia in his autopsy photos. As to the photos taken of Mr. Givens in his cell on the date of his death, the circumstances are quite odd. At or about 9:36 AM, Mr. Givens, according to Defendants, "took his last exhale." **Ex. 8,** 2 VDOC 000017, *see also* Osborne Dep. Tr. 89:9-11). Just six minutes later, at 9:42 AM, an MCTC lieutenant began taking death scene photos, perhaps even before EMS arrived. **Ex. 10,** Plaintiff's Tr. Ex. 10; **Ex. 9,** 2 VDOC 000015. In the context of the foregoing, unredacted photos are necessary to assist the fact finder with fully understanding the circumstances of when Mr. Givens died and more precisely processing the time of his death.

Also, the photos are not graphic, and will help the jury more fully process that a man died. *See* **Ex. 10,** Pl. Tr. Exs. 10-11. Looking at the death scene photos without redactions is no different than what Kym Hobbs and other families are asked to do – to confront death when confirming the identity of their loved ones. Surely, the jury can handle such. Indeed, both sides will be presenting the jury with far more graphic autopsy photos.

4. Defendants have made clear that they plan to aggressively cross-examine Mr. West and call into question his observations. Upon doing so, the Rules permit Plaintiff to offer consistent previous statements made by him, including his statements to Edwin Catron. *See* FRE 801(d)(1)(B) (stating that a prior consistent statement is considered non-hearsay when offered to rebut an express or implied charge of recent fabrication or improper influence, and the declarant testifies and is subject to cross-examination about the statement.) Catron will testify as to what West told

3

him, and to the extent Catron is cross-examined as to the veracity of those comments, Catron's prior consistent statements will offered, and the same with Debbie Douglas's statements to the Governor's Office and to Mrs. Hobbs. Also, the foregoing are the events that led to Mrs. Hobbs' discovery of the same and the basis for her initiating this action.

5. Plaintiff does not propose to offer in her case-in-chief the grand jury testimony of non-Defendants, but may do so under the Federal Rules of Evidence (hereinafter, the "Rules") in response to actions by the Defendants or witnesses called by them.

6. *Numerous* actions were taken to cloak the circumstances of Mr. Givens's death from outside investigators, Mrs. Hobbs, the grand jury, and the public. The Defendants offered no information about what happened in the shower in the morning and the prison told the state police that Mr. Givens died of natural causes. It wasn't until the medical examiner determined that Mr. Givens died of blunt force trauma that a fuller story began to emerge; then, the Defendants, without any basis whatsoever, started to promote the story that Mr. Givens must have slipped in his cell after being brought back from the shower. Plaintiff can certainly explore the Defendants' motivations to lie about what happened to Mr. Givens and Defendants offer no substantiated argument to the contrary.

7.

   a. It is *undisputed* that Mr. Givens was left in his boxer shorts on the morning of February 5, 2022, a winter morning, right after he was showered by the Defendants. Pl's Tr. Ex. 10. This is relevant for numerous reasons, one of which is that it shows that Defendants Montgomery and Osborne, who had an obligation to round on Mr. Givens, ignored his condition. Mr. Givens could not dress himself. **Ex. 7,** Pl's Tr. Ex. 84, West Aff. ¶¶ 14-15. One of the defendants described how he would need help just to get his underwear on – Mr. Givens would

4

have to sit on his bed and hold it up his legs for an employee to slide on his shorts. **Ex. 6,** Osborne Dep. Tr. 110:11-16. Mr. Givens was not given any sheets or blanket, yet he was left partially naked for hours in a frigid cell – at least one of the Defendants was wearing a winter coat at the time. **Ex. 10, 11,** Pl's Tr. Exs. 10, 37.

      b.      Mr. Givens was regularly showered at night or in the early morning hours. Indeed, the Defendants have admitted that he regularly defecated on himself, and they took him to the showers because of such. **Ex. 7,** Pl's Tr. Ex. 84, West Aff. ¶¶ 16, 23.

      c.      West *was,* in fact, moved away from MCTC because Virginia State Police investigators believed that he feared retaliation for speaking truthfully. More specifically, VSP Special Agent Seagle will testify that on the day he interviewed Mr. West (four days after Mr. Givens's death) within the confines of MCTC, West seemed to have something he wanted to say about the events surrounding Mr. Givens's death, but was reluctant or afraid to speak freely. West's written statement to VSP SA Seagle reflects this reluctance, specifically where he says he "can't speak about it." **Ex. 7,** Pl's Tr. Ex. 84, West Aff. ¶¶ 52-53. At this interview, West does not want to talk and notably fails to say that Mr. Givens was beaten. West will be attacked for the inconsistency between his original statement to SA Seagle and the later one made outside the walls of MCTC. Once the autopsy report came back that Mr. Givens died from blunt force trauma, SA Seagle, with the cooperation of VADOC, determined that he needed to move West for two reasons. Seagle is expected to testify that he feared for West's safety if West remained at MCTC, and, secondly, that West would only be free to discuss the morning of Mr. Givens's death if West were interviewed at a place he felt safe to talk. Accordingly, in concert with the VADOC, West was relocated from MCTC to the Bland Correctional Center and soon after interviewed by Seagle in a safe environment. **Ex. 7,** Pl's Tr. Ex. 84, West Aff. ¶¶. 55-56.

5

Apart from being accurate, the issue is not one that is properly subject to exclusion from evidence. It is not prejudicial to the Defendants, and describes Mr. West's hesitancy to speak truthfully.

        d.     Plaintiff does not plan to assert that Mr. Givens suffered welts on his back.

8.     As Defendants are aware, the Court found the motion to sever to be moot, and Plaintiff should not have to guess at which arguments Defendants are referring to as Plaintiff had to do in response to Defendants' Motions for Summary Judgment.

9.     Plaintiff has agreed that its expert Dr. Oliver will not use the word "torture" in his testimony. That, however, is a proper characterization as to what Defendants did to Mr. Givens on February 5, 2022, and *Plaintiff* is fully within her rights to argue the same to the jury and characterize Mr. Givens's murder by that term.

Any concession made by Plaintiff above is premised upon the Plaintiff raising or arguing the issue as phrased by the Defendants. If Defendants open the door to the matter, including by making a statement that is contrary to a statement that they made in their deposition, Plaintiff certainly, under the Rules, could cross Defendants with their statement or employ evidence as permitted by the Rules.

WHEREFORE, Plaintiff requests that the Court rule on Defendants' Motions in Limine as noted above.

Exhibits in support of this Memorandum are attached as follows:

    **Ex. 1** - Pl's Tr. Ex. 158, 159

    **Ex. 2** - Kelly Dep. Tr., pp. 10, 45, 94.

    **Ex. 3** - Plummer Dep. Tr., pp. 10, 15, 82.

    **Ex. 4** - Montgomery Dep. Tr., p. 6.

Case 1:23-cv-00003-JPJ-PMS    Document 183    Filed 03/24/25    Page 7 of 8
                              Pageid#: 2283

      **Ex. 5** - Jackson Dep. Tr., p. 40.

      **Ex. 6** - Osborne Dep. Tr., pp. 17, 18, 25, 49, 89, 110.

      **Ex. 7** - Pl. Tr. Ex. 84.

      **Ex. 8** - 2 VDOC 000017

      **Ex. 9** - 2 VDOC 000015

      **Ex. 10** - Pl. Tr. Ex. 10.

      **Ex. 11** - Pl. Tr. Ex. 37.

      Respectfully submitted,

      KYMBERLY HOBBS, ADMINISTRATOR
OF THE ESTATE OF CHARLES JAMES
GIVENS, DECEASED

      By:     /s/ Mark J. Krudys_____
                        Counsel

Mark J. Krudys (VSB No. 30718)
Daniel Zemel (VSB No. 95073)
THE KRUDYS LAW FIRM, PLC
919 East Main Street, Suite 2020
Richmond, Virginia 23219
Phone: (804) 774.7950
Fax: (804) 381.4458
Email mkrudys@krudys.com; dzemel@krudys.com

C. Paul Stanley, III (VSB No. 36789)
C. PAUL STANLEY ATTORNEY AT LAW
390 West Spring Street
Wytheville, VA 24382
Phone: (276) 228-4003
Fax: (276) 276-228-2984
Email: cpst3d@gmail.com

*Counsel for Plaintiff Kymberly Hobbs, Administrator of the Estate of Charles James Givens, Deceased*

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of March 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing all counsel of record.

      /s/ Mark J. Krudys
Mark J. Krudys (VSB# 30718)
THE KRUDYS LAW FIRM, PLC
919 East Main Street, Suite 2020
Richmond, Virginia 23219
804.774.7950 Phone
804.381.4458 Fax
dzemel@krudys.com
*Counsel for Plaintiff*